**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
DONALD L. PHELPS, et al.,      )
                               )
                Plaintiff,     )    CIVIL ACTION
                               )
v.                             )    No.  03-1282-MLB
                               )
GARY M. KRAMER, M.D.,          )
                               )
                Defendant.     )
                               )
```

**MEMORANDUM AND ORDER**

This is a medical malpractice action brought by the estate of Shannan Valdez and her minor children. This case comes before the court on defendant's motion for partial summary judgment. (Doc. 36). The motion has been fully briefed and is ripe for decision. (Docs. 37, 41, 45). Defendant's motion is denied, for reasons herein.

**I.   FACTS**

On September 18, 2001, Shannon Valdez was employed as a pen rider at Grant County Feeders. While working, Valdez sustained an injury to her left lower leg when a horse fell on her. Valdez was transferred from Bob Wilson Memorial Hospital in Ulysses, Kansas, to St. Catherine's Hospital in Garden City, Kansas. Dr. Kramer evaluated plaintiff at St. Catherine's and performed surgery on her left knee. Following the surgery, Valdez experienced a number of complications. In October, Valdez began having difficulty with depression, inability to sleep, anxiety and pain. Dr. Kramer prescribed Paxil, Xanax, Ambien, and Darvocet. On November 7, 2001, Valdez had not regained flexion and extension in her toes, but defendant noted that she had regained "almost normal" sensation. Dr. Kramer instructed Valdez to

continue her physical therapy with additional weight bearing and strengthening for her leg. In December, Dr. Kramer increased plaintiff's dosage of Paxil. At some point in December, plaintiff was seen by a psychiatrist, Dr. Montgomery, who made a primary diagnosis of severe depression.[1] On December 14, 2001, Dr. Kramer took x-rays of Valdez' left ankle which revealed a trimalleolar fracture. Dr. Kramer allowed plaintiff to reduce her physical therapy after the discovery of the fracture. On January 8, 2002, Dr. Kramer performed surgery to repair the fracture. Dr. Kramer did not treat Valdez after March 2002. (Docs. 37 at 3-4; 41 at 3-4, 8-9, 12).

On March 25, 2002, Dr. Jansson examined Valdez and noted that she had a lack of peroneal and tibial nerve function. Dr. Jansson noted that Valdez had an insensate foot since her treatment by Dr. Kramer. Dr. Jansson informed Valdez of the possibility of amputation due to the problems in her leg. Dr. Jansson referred Valdez to Dr. Fanning who recommended an EMG/nerve conduction study. The study concluded that Valdez had a total absence of sural, peroneal, and posterior tibial nerve responses. On April 16, 2002, Dr. Jansson performed surgery on Valdez' left knee to remove hardware that remained after Dr. Kramer's surgery. On October 10, 2002, Dr. MacKinnon performed surgery to release compression of various nerves. (Docs. 37 at 4-6; 41 at 4).

On November 5, 2002, Valdez took an overdose of Ambien. Valdez was interviewed by Dr. Hanson at St. Catherine's Hospital. Valdez stated that she had a lot of stress, severe pain, difficulty with

---

[1] Plaintiff had been previously diagnosed as having "intermittent explosive disorder" in February 2001. (Doc. 37 at 6).

ambulation and was involved in stressful relationships.  On November 6, 2002, Dr. Montgomery examined Valdez and discussed inpatient care. Valdez, however, refused to undergo inpatient care.  On December 5, 2002, Valdez was examined at Area Mental Health and was in a very depressed state.  Valdez noted that her husband wanted a divorce and she did not.  (Docs. 37 at 8-9; 41 at 5).

On December 8, 2002, Officer De La O, Jr. responded to a disturbance at the residence of Mike Valdez, Valdez' husband.  Officer De La O testified that Valdez was drunk, angry, sad and "not happy at all."  Valdez returned to her residence, called a neighbor and asked for a gun or knife.  Valdez committed suicide in her residence later that evening.  (Docs. 37 at 9; 41 at 5-6).

Valdez' minor children and her estate filed this medical malpractice action against Dr. Kramer.  Dr. Kramer has moved for partial summary judgment on plaintiffs' claim for wrongful death damages.  Dr. Kramer asserts that his alleged negligence was not the cause of plaintiff's suicide because the suicide was an intervening act.

**II.   SUMMARY JUDGMENT STANDARDS**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n

issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

### III. **ANALYSIS**

The question of whether a negligent act caused or contributed to cause the injury is usually one for the trier of fact; however, the Kansas Supreme Court held if "two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury the question of remote and proximate cause becomes one of law for the decision of the court, and not a question of fact for determination by a jury." <u>Steele v. Rapp</u>, 183 Kan. 371, 383, 327 P.2d 1053 (1958); <u>Barkley v. Freeman</u>, 16 Kan. App.2d 575, 581, 827 P.2d 774, 778-79 (1992).

Accordingly, the court must determine whether Valdez' suicide was a foreseeable event or if its occurrence was an intervening cause.

> An intervening act of negligence is one which actively operates in producing harm to another after the original act of negligence or omission has been committed. In determining issues of legal or direct cause, an intervening cause has been said to be material insofar as it supersedes a prior wrong as the direct cause of an injury by breaking the sequence of events between the original wrong and the

-4-

> injury received. One person's negligence is not the proximate or direct cause of an injury where there is a new, separate, wholly independent, and efficient intervening cause of the injury and the loss.

Barkley, 16 Kan. App.2d at 581-582.

> Courts have long been reluctant to recognize suicide as a proximate consequence of defendant's wrongful act. Watters v. TSR, Inc., 904 F.2d 378, 383 (6th Cir. 1990) (citing Scheffer v. Washington City V.M. & G.S.R.R., 105 U.S. 249, 15 Otto 249, 26 L. Ed. 1070 (1881)). Generally, the act of suicide is viewed as an independent intervening act which the original tortfeasor could not have reasonably been expected to foresee. Id.; see also Salsedo v. Palmer, 278 F. 92 (2d Cir. 1921); Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217 (1965). In Elliott, the court stated: Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur. It has also been said that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability. 203 Kan. at 284, 454 P.2d 124. An exception arises when the conduct of the tortfeasor causes a mental condition which results in an uncontrollable impulse leading to suicide. See, e.g., Jamison v. Storer Broadcasting, Co., 511 F.Supp. 1286 (E. D. Mich. 1981); Hamilton v. Chaffin, 506 F.2d 904 (5th Cir. 1975); Tate v. Canonica, 180 Cal. App.2d 898, 5 Cal. Rptr. 28 (1960).

Burdett v. Harrah's Kansas Casino Corp., 294 F. Supp.2d 1215, 1234-35 (D. Kan. 2003); see also Focke v. United States, 597 F. Supp. 1325, 1351-52 (D. Kan. 1982).

Plaintiffs assert that Valdez' suicide was a natural and proximate cause of Dr. Kramer's negligence. Plaintiffs rely solely, as they must, on the testimony of Dr. Montgomery to support this assertion. Dr. Montgomery has opined that plaintiff committed suicide as a result of her intoxication, divorce and depression. He asserts that the depression was a result of the significant pain in her leg. Dr. Montgomery also has opined that Dr. Kramer's treatment was a factor in her alcohol consumption. In the absence of one of the three

factors, Dr. Montgomery does not believe that Valdez would have committed suicide.  Rather, he contends that the conjunction of all three caused Valdez to commit suicide.  In response to the question of whether the suicide was a natural and foreseeable event, Dr. Montgomery stated "[t]he malpractice had a very significant effect on it."  This statement of opinion, if that's what it is offered as, lacks foundation, Fed. R. Evid. 703.[2]

Faced with the testimony of Dr. Montgomery, the court finds that there is a genuine dispute as to whether the suicide was foreseeable.  Accordingly, defendant's motion for summary judgment is denied.

## IV. CONCLUSION

Dr. Kramer's motion for summary judgment (Doc. 36) is denied.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider

---

[2] The portions of depositions of Dr. Montgomery are not helpful to the court in deciding this motion.  Counsel consistently failed to ask Dr. Montgomery proper questions that would address the issue of forseeability.  Moreover, Dr. Montgomery continuously referred to Dr. Kramer's actions as malpractice even though he opined that he is not an expert in the area of fractures and the record is bare of any uncontroverted evidence that Dr. Kramer's treatment was negligent.
  Accordingly, the court finds that a hearing pursuant to <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), is necessary to evaluate the testimony of Dr. Montgomery.  At this hearing, the court expects counsel to properly question Dr. Montgomery as to the relevant legal issues in the case. The parties will be notified of the date of the hearing by the court.

and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   7th   day of June 2006, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE